David M. SKINNER and Jennifer
L. Skinner, Plaintiffs,

v.

Marc CHAPMAN, Debra
Breese, Defendants.

No. 03–CV–6216L.

United States District Court,
W.D. New York.

July 26, 2004.

David M. Skinner, Wayland, NY, pro se.

Jennifer L. Skinner, Wayland, NY, pro se.

Joseph B. Rizzo, Gallo & Iacovangelo LLP, Rochester, NY, Thomas K. Murphy, Murphy, Burns, Barber & Murphy, LLP, Albany, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

This is a *pro se* civil rights action, pursuant to 42 U.S.C. § 1983 against a police officer and a dog-control officer for the temporary taking of plaintiffs' Labrador Retriever, Dexter. For ages, man's "best friend" was considered to be his dog. Plaintiffs obviously had strong feelings for Dexter. Nevertheless, his brief removal from the family, under the circumstances presented, is not actionable under § 1983. Defendants' motion for summary judgment is granted and the complaint is dismissed.

Plaintiffs, David M. Skinner and Jennifer L. Skinner (hereinafter "plaintiffs"), originally filed this complaint against several defendants. Pursuant to the provisions of 28 U.S.C. § 1915(e), the Court (Skretny, J) dismissed all the claims on initial review, except those against the two remaining defendants, Marc Chapman ("Chapman"), a Sergeant with the Wayland, New York Police Department, and Debra Breese ("Breese"), a dog-control officer for the town. The Court converted

Chapman's motion to dismiss to a motion for summary judgment and so advised the parties by order entered April 29, 2004 (Docket # 17). Defendant Breese joined the summary judgment motion (Docket # 21), and the parties submitted additional affidavits in support of their respective positions.

## FACTS

Although there are some disputes as to particulars, the essential facts are largely uncontested. On September 13, 2002, Breese was contacted by a resident, Victoria Wagner, who complained that her ten-year-old son had been bitten by a dog (later identified as Dexter) owned by plaintiffs. The biting allegedly occurred near the rear of Wagner's property which abuts plaintiffs' property.

Breese went to the Skinner residence and spoke either with plaintiffs or their children about the incident.[1] At this initial inquiry, Breese determined that Dexter was a young dog, seven to nine months old, who had not yet been vaccinated for rabies. The dog also was not licensed. According to Breese, the dog should have been vaccinated when it was three months old.

According to Breese, the Skinners were advised then that the dog should have been vaccinated, and that they needed to confine Dexter for ten days and make sure that there was no unusual behavior, consistent with a rabies infection. Breese also indicated that she warned that Dexter should not be at large again.

The following day, Breese received another complaint from the Wagners that Dexter was on the loose again. Breese responded to the Skinner residence at about 9:15 p.m. and told the Skinners that she had received a complaint that the dog had been loose, and, because of the circumstances, she needed to take the dog and quarantine it for ten days to make sure that it did not have rabies. Breese asserts that she informed the Skinners that she had the authority to impound the dog because it was not licensed or vaccinated and because it had bitten a child. According to Breese, the Skinners were combative and used profanity in response.

When the plaintiffs continued their refusal to turn over the dog, Breese left the premises but advised plaintiffs that because of their failure to cooperate, she would call the police to assist her in removing the dog. A short time later, Breese, together with Officer Chapman of the Wayland Police Department, responded to the Skinner residence. The Skinners again refused to cooperate because neither Chapman nor Breese had a warrant to the seize the dog. Officer Chapman advised the Skinners that they could be cited for obstructing governmental administration for their failure to cooperate. When Mr. Skinner again refused access to the dog, both Chapman and Breese left the residence to obtain a sworn statement from the complainant, Victoria Wagner.

Later that same evening, Chapman and Breese returned to the Skinner residence and in an attempt to mollify the situation, they advised Mr. Skinner that they would waive any appearance tickets or impoundment fees if Skinner cooperated. Eventually, Mr. Skinner cooperated and put the dog in Breese's van, although he continued to use invective when addressing Breese.

Dexter was held at the kennel for eleven days until September 25, 2002, when he

---

1. Breese indicated that she spoke with the Skinners; David Skinner indicated that Breese must have spoken to his children since neither he nor his wife were at home at the time of the initial visit.

was released to plaintiffs after he had received a rabies vaccination and was licensed. Although Dexter was returned, plaintiffs were both charged with obstructing governmental administration, and both pleaded guilty to the charge in Wayland Village Court.

## DISCUSSION

This case concerns the temporary taking of a dog without a warrant. Plaintiffs argue that they were injured by being deprived of due process when their dog was allegedly seized without warrant or cause.

■ Assuming the truth of everything the plaintiffs allege, the temporary taking of Dexter does not rise to the level of a constitutional deprivation of property. To prevail in a § 1983 action, two elements must be met: (1) defendants' conduct must be committed by a person acting under color of state law; and (2) this conduct must deprive a person of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Here, plaintiffs' claims fail on the second element.

The plaintiffs assert a § 1983 claim based on the Fourth Amendment, which ensures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Place*, 462 U.S. 696, 700, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). "Effects" are defined to include personal property under Fourth Amendment analysis. *See Id. at* 705, 103 S.Ct. 2637. I will assume, without deciding that, under New York State law, dogs are personal property. *See, e.g.*, N.Y. Agric. & Mkts. Law § 109 (Consol.2004).

The seizure of Dexter was not unreasonable and does not raise a constitutional violation under the Fourth or Fourteenth Amendments. Breese was acting pursuant to § 118 of New York State's Agriculture and Markets Law when she seized the dog (Docket # 22, ¶ 21). New York State law allows a dog control officer or police officer to seize any dog because, among other reasons, it is not licensed, it poses an immediate threat to public safety, or it is "in violation of any local law or ordinance relating to the control of dogs." N.Y. Agric. & Mkts. Law § 118 (Consol.2004). In addition, New York Public Health Law § 2140(7) references a ten-day confinement and observation period for all dogs that have potentially exposed a person to rabies because the animal is not actively immunized against rabies at the time of the bite. Moreover, it is a violation of the "Dog Control Local Law of the Town of Wayland" for a dog to be at large, chase, or harass any person "in such a manner as reasonably to cause intimidation or to put such person in reasonable apprehension of bodily harm or injury." §§ 5(a), (d), Wayland Local Law No. 1, 1980. Dog control or police officers are directed to seize any dogs in violation of Wayland Local Law. *Id.* at § 7(a).

Breese and Chapman's actions were reasonable and consistent with state and local law. Dexter was not licensed, had not received a rabies vaccination, and was suspected of being at large and biting a child. The undisputed fact that Dexter was not licensed gave Breese justification alone for seizing him from the Skinner residence. N.Y. Agric. & Mkts. Law § 118(1)(b) (Consol.2004). Under Wayland local law and New York State law, the other allegations against Dexter also serve as justification for a reasonable seizure. Breese and Chapman acted reasonably to ensure public safety, and public safety is the stated purpose for both Wayland and New York State dog control laws. N.Y. Agric. &

MKTS. LAW § 106 (Consol.2004); § 1 Wayland Local Law No. 1, 1980. Once seized, Dexter was impounded and treated in a manner consistent with § 7 Wayland Local Law No. 1, 1980 and § 118 of the New York State Agriculture and Markets Law.[2]

■ Even if Dexter was seized unreasonably, this deprivation of property is not unconstitutional. A seizure that is suspect under the Fourth Amendment occurs when there is "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The temporary taking of Dexter by a duly authorized official, where the owner knew who was seizing the dog, where the dog was to be confined, and when the seizure was temporary does not constitute an unlawful seizure and does not raise a constitutional violation. *See Kostiuk v. Town of Riverhead,* 570 F.Supp. 603, 609 (1983). The Skinners knew why Dexter was being taken, who was taking him, and were advised that he would be retained only for ten days for observation. (Docket # 22). Therefore, under these circumstances, there was no "meaningful interference" with a property interest that deserves constitutional protection.

## CONCLUSION

Every dog has its day, but this is not Dexter's. Dexter's seizure and ten-day impoundment is not a violation of § 1983. Defendants' motion for summary judgment (Docket # 6) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

---

2. Breese admits that she was not proceeding under § 118(1)(c) and did not consider Dexter to be a "dangerous dog" under that provision. (Docket # 22). Therefore, plaintiffs' arguments regarding §§ 121(3)—121(5) are irrelevant.